IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Ricky Wood, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Hut American Group LLC; Flynn Restaurant Group LP; Jeremy Biser; Greg Flynn; Ron Bellamy; Doe Corporation 1-10; and John Doe 1-10 | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Ricky Wood, on behalf of himself and similarly situated individuals, brings this action against Defendants Hut American Group LLC; Flynn Restaurant Group LP; Jeremy Biser; Greg Flynn; Ron Bellamy; Doe Corporation 1–10; and John Doe 1–10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and for unjust enrichment.

2.     Defendants operate approximately 64 Pizza Hut Pizza locations in Tennessee ("Defendants' Pizza Hut stores").

3.     Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Pizza Hut stores.

4.     Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.     All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

**Ricky Wood**

8.     Plaintiff Ricky Wood is a resident of Newport, Tennessee in Cocke County.

9.     Plaintiff is an "employee" of all the Defendants as defined in the FLSA.

10.     Plaintiff has given written consent to join this action.

**Defendants**

**Hut American Group LLC**

11.     Defendant Hut American Group LLC is a Delaware limited liability company doing business in Tennessee.

12.     Hut American Group LLC operates the Defendants' Pizza Hut stores.

2

13.     Hut American Group LLC operates approximately 64 Pizza Hut stores in Tennessee.

14.     Hut American Group LLC is owned and operated by Flynn Restaurant Group LP.

15.     Beginning in approximately January 2021, Hut American Group LLC was the entity that appeared on Plaintiff's paystubs for work he completed for Defendants' Pizza Hut stores.

16.     Beginning in approximately January 2021, Hut American Group LLC had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17.     Beginning in approximately January 2021, Hut American Group LLC had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

18.     Beginning in approximately January 2021, Hut American Group LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

19.     Hut American Group LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

20.     Beginning in approximately January 2021, Hut American Group LLC had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

21.     Hut American Group LLC's gross revenue exceeded $500,000 per year.

3

**Flynn Restaurant Group LP**

22.     Defendant Flynn Restaurant Group LP is a Delaware limited liability company doing business under in Tennessee.

23.     Flynn Restaurant Group LP owns and operates the Defendants' Pizza Hut stores.

24.     Flynn Restaurant Group LP owns and operates approximately 64 Pizza Hut stores in Tennessee.

25.     Flynn Restaurant Group LP owns and operates Hut American Group LLC.

26.     Beginning in approximately January 2021, Flynn Restaurant Group LP had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

27.     Beginning in approximately January 2021, Flynn Restaurant Group LP had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

28.     Beginning in approximately January 2021, Flynn Restaurant Group LP maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

29.     Flynn Restaurant Group LP is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

30.     Beginning in approximately January 2021, Flynn Restaurant Group LP had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

4

31.     Flynn Restaurant Group LP's gross revenue exceeded $500,000 per year

**Jeremy Biser**

32.     Jeremy Biser operates Hut American Group LLC and the Defendants' Pizza Hut stores.

33.     Jeremy Biser is the President of Hut American Group LLC.

34.     Jeremy Biser operates approximately 64 Pizza Hut stores in Tennessee.

35.     Jeremy Biser is individually liable to the delivery drivers at the Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA because he owns and operates the Defendants' Pizza Hut stores, serves as owner of Hut American Group LLC, ultimately controls significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

36.     Upon information and belief, Jeremy Biser is a franchisee of the Defendants' Pizza Hut stores.

37.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had financial control over the operations at each of the Defendants' Pizza Hut stores.

38.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

39.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had control over the Defendants' Pizza Hut stores' pay policies.

5

40.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

41.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

42.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

43.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had the power to transfer the assets and liabilities of the Defendant entities.

44.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had the power to declare bankruptcy on behalf of the Defendant entities.

45.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

46.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

47.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Jeremy Biser has had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

48.     The Defendants' Pizza Hut stores function for Jeremy Biser's profit.

49.     Jeremy Biser has had influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Greg Flynn**

50.     Defendant Greg Flynn owns and operates Flynn Restaurant Group LP and the Defendants' Pizza Hut stores.

51.     Greg Flynn is the Chief Executive Officer of Flynn Restaurant Group LP.

52.     Greg Flynn owns and operates approximately 64 Pizza Hut stores in Tennessee.

53.     Greg Flynn is individually liable to the delivery drivers at the Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA because he owns and operates the Defendants' Pizza Hut stores, serves as owner of Flynn Restaurant Group LP, ultimately controls significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

54.     Upon information and belief, Greg Flynn is a franchisee of the Defendants' Pizza Hut stores.

55.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had financial control over the operations at each of the Defendants' Pizza Hut stores.

7

56.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

57.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had control over the Defendants' Pizza Hut stores' pay policies.

58.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

59.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

60.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

61.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had the power to transfer the assets and liabilities of the Defendant entities.

62.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had the power to declare bankruptcy on behalf of the Defendant entities.

63.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

64.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

65.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Greg Flynn has had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

66.     The Defendants' Pizza Hut stores function for Greg Flynn's profit.

67.     Greg Flynn has had influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Ron Bellamy**

68.     Defendant Ron Bellamy operates Flynn Restaurant Group LP and the Defendants' Pizza Hut stores.

69.     Ron Bellamy is the Chief Improvement Officer of Flynn Restaurant Group LP.

70.     Ron Bellamy is responsible for overseeing Flynn Restaurant Group LP's Pizza Hut businesses.

71.     Ron Bellamy operates approximately 64 Pizza Hut stores in Tennessee.

72.     Ron Bellamy is individually liable to the delivery drivers at the Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA because he owns and operates the Defendants' Pizza Hut stores, serves as owner of Flynn Restaurant Group LP, ultimately controls significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

9

73.     Upon information and belief, Ron Bellamy is a franchisee of the Defendants' Pizza Hut stores.

74.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had financial control over the operations at each of the Defendants' Pizza Hut stores.

75.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

76.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had control over the Defendants' Pizza Hut stores' pay policies.

77.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

78.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

79.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

80.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had the power to transfer the assets and liabilities of the Defendant entities.

81.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had the power to declare bankruptcy on behalf of the Defendant entities.

82.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

83.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

84.     At all relevant times, by virtue of his role as owner of the Defendants' Pizza Hut stores, Ron Bellamy has had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

85.     The Defendants' Pizza Hut stores function for Ron Bellamy's profit.

86.     Ron Bellamy has had influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Doe Corporation 1–10**

87.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

88.     Upon information and belief, Jeremy Biser, Greg Flynn and/or Ron Bellamy own and operate, in whole or in part, a number of other entities that make up part of the Defendants' Pizza Hut operation.

11

89.     Upon information and belief, the franchisor, Pizza Hut Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

90.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1–10**

91.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

92.     Upon information and belief, Jeremy Biser, Greg Flynn and/or Ron Bellamy have entered into co-owner relationships with a number of their managers and/or business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

93.     50.     Upon information and belief, Lorin Cortina, Adam van Horn, Aaron Kirkman, Richard Wykes, Jennifer Zika are such additional individuals who may also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

94.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

### Class-wide Factual Allegations

95.     During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

96.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Pizza Hut stores.

97.     All delivery drivers employed at the Defendants' Pizza Hut stores since Defendants took ownership of the Pizza Hut stores have had essentially the same job duties.

98.     When there were no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Pizza Hut stores building pizza boxes, making pizzas, cleaning, preparing food items, taking orders, and completing other duties inside the restaurant as necessary.

99.     The job duties performed by delivery drivers inside the store are not related to their duties while they were out on the road making deliveries.

100.     Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

101.     The delivery drivers at the Defendants' Pizza Hut stores work "dual jobs."

102.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked while completing deliveries.

103.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant.

104.     Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cars to use while completing deliveries for Defendants.

13

105.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

106.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

107.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffer automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

108.    The Defendants' Pizza Hut stores reimburse their delivery drivers at a per mile rate.

109.    Defendants' reimbursement payments have no connection to the actual expenses incurred by the delivery drivers.

110.    The Defendants' Pizza Hut stores do not track or record the delivery drivers' actual expenses.

111.    The Defendants' Pizza Hut stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

112.    The Defendants' Pizza Hut stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

14

113.    The Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses that delivery drivers incur.

114.    The Defendants' Pizza Hut stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

115.    The Defendants' Pizza Hut stores do not even reasonably approximate the delivery drivers' actual expenses.

116.    The Defendants' Pizza Hut stores reimbursement rate is not a reasonable approximation of the delivery drivers' actual expenses.

117.    The Defendants' Pizza Hut stores' reimbursement payments result in reimbursements that are and/or were less than the IRS standard business mileage rate for each mile driven.

118.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.    2021: 56 cents/mile
    b.    2022 (January to June): 58.5 cents/mile
    c.    2022 (July to December): 62.5 cents/mile

119.    Defendants also require delivery drivers to download and use an application on their phones to track miles.

120.    Thus, the delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

15

121.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

122.    Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

123.    Because Defendants pay their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incur unreimbursed automobile expenses, the delivery drivers "kick back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

124.    Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

125.    Defendants have willfully failed to pay federal minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Pizza Hut stores and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

**Plaintiff's Individual Factual Allegations**

126.    Plaintiff worked at the Pizza Hut store in Newport, Tennessee from approximately 2016 to August 2021.

127.    When Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included building pizza boxes, making pizzas, cleaning, preparing food items, taking orders and completing other duties inside the restaurant as necessary.

16

128.     Plaintiff worked dual jobs.

129.     Plaintiff's inside duties were not related to his delivery duties.

130.     Plaintiff was paid $7.25 per hour by Defendants for the hours he worked until inside of the restaurant in a non-tipped capacity.

131.     Plaintiff was paid a tipped wage rate of $4.25 per hour by Defendants for the hours he worked on the road delivering pizza and other food items for Defendants.

132.     Plaintiff was required to use his own car to deliver pizzas.

133.     Plaintiff was reimbursed a per mile rate for each of the delivery orders he completed.

134.     Plaintiff was reimbursed approximately $.20 for each mile driven.

135.     Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

136.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

137.     Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

138.     Defendants did not track the actual expenses incurred by Plaintiff.

139.     Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

17

140.    Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

141.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

142.    Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

143.    In 2021, for example, the IRS business mileage reimbursement was $.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. During this time period, Plaintiff was reimbursed $.20 per mile. Considering Plaintiff's estimate of about 7 miles per delivery (7 miles × $.20 per mile = $1.40), Defendants under-reimbursed him by about $2.52 per delivery ($3.92 - $1.40). Since Plaintiff completed approximately 3 deliveries per hour, Plaintiff was under-reimbursed by approximately $7.56 per hour ($2.52 × 3 deliveries per hour).

144.    Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

145.    Additionally, Defendants require delivery drivers to download and use an application on their phones to track their miles driven.

146.    Plaintiff incurred additional costs such as data usage and other fees for using the application, which also undercut his hourly wage.

147.    Defendants failed to pay Plaintiff minimum wage as required by law.

18

## Collective Action Allegations

148.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants in Tennessee, from the date Defendants took ownership of the Pizza Hut stores prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

149.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

150.    Defendants' unlawful conduct is pursuant to a company policy or practice.

151.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

152.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

153.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

154.    The FLSA Collective members are readily identifiable and ascertainable.

155.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

19

## Class Action Allegations

156.    Plaintiff brings the Second Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Tennessee between the date Defendants took ownership of the Pizza Hut stores and the date of final judgment in this matter ("Unjust Enrichment Class").

157.    Excluded from the Unjust Enrichment Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Unjust Enrichment Class.

158.    The number and identity of the Unjust Enrichment Class members are ascertainable from Defendants' records.

159.    All of the records relevant to the claims of members of the Unjust Enrichment Class should be found in Defendants' records.

160.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

161.    Notice can be provided by means permissible under Rule 23.

162.    The members of the Unjust Enrichment Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

163.    There are more than 50 Unjust Enrichment Class members.

164.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by each member of the Unjust Enrichment Class in separate actions.

165.    Plaintiff and the members of the Unjust Enrichment Class were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage and being unjustly enriched.

166.    Defendants have all been unjustly enriched by Plaintiff and the Unjust Enrichment Class members in the same way.

167.    Plaintiff and the members of the Unjust Enrichment Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

168.    Plaintiff is able to fairly and adequately protect the interests of the Unjust Enrichment Class and has no interests antagonistic to the Unjust Enrichment Class.

169.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

170.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

171. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

172. Common questions of law and fact exist as to the Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Unjust Enrichment Class members individually and include, but are not limited to:

   a. Whether Plaintiff and the Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

   b. Whether Plaintiff and the Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

   c. Whether Plaintiff and the Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

   d. Whether Plaintiff and the Unjust Enrichment Class conferred a measurable benefit on Defendants;

   e. Whether Defendants avoided business expenses they would have otherwise been required to incur but-for Plaintiff and the Unjust Enrichment Class providing cars to use when making deliveries;

   f. How much it would have cost Defendants to operate their business but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

   g. Whether Defendants appreciated the benefit that was being conferred on them by Plaintiff and the Unjust Enrichment Class;

   h. The nature and extent of class-wide injury and the measure of damages for those injuries.

173. In recognition of the services Plaintiff has rendered and will continue to render to the Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

22

## Cause of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

174.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

175.   Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

176.   Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

177.   Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

178.   Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

179.   By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

180.   Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

181.   As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

23

**Count 2**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Unjust Enrichment Class)**

182.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

183.    The Unjust Enrichment Class has conferred a benefit on Defendants by using their own cars to use when performing deliveries for Defendants.

184.    The benefits include, but are not limited to, direct and indirect financial benefits like increased profits, and increased ability to compete on the price of Defendants' products.

185.    Defendants have appreciated the benefit conferred on them by the Unjust Enrichment Class.

186.    Defendants did not compensate or under-compensated Plaintiff and the Unjust Enrichment Class for these benefits.

187.    It would be inequitable for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Unjust Enrichment Class without payment of the value thereof.

188.    Plaintiff and the Unjust Enrichment Class are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages.

**WHEREFORE**, Plaintiff Ricky Wood prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

24

B.     Designation of Plaintiff as representative of the Unjust Enrichment Class and counsel of record as Class Counsel of the Unjust Enrichment Class.

C.     Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

D.     An award of restitution for unjust enrichment to the Unjust Enrichment Class.

E.     An award of prejudgment and post-judgment interest.

F.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

G.     Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ David Garrison*
David W. Garrison (No. 24968)
Joshua A. Frank (No. 33294)
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
*dgarrison@barrettjohnston.com*
*jfrank@barrettjohnston.com*

and

Andrew R. Biller (*pro hac vice forthcoming*)
Andrew P. Kimble (*pro hac vice forthcoming*)
Riley E. Kane (*pro hac vice forthcoming*)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

25

*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## Jury Demand

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

_/s/ David Garrison_
David Garrison