**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| Ricky Wood,<br><br>*On behalf of himself and those similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>Hut American Group LLC; Flynn Restaurant Group LP; Jeremy Biser; Greg Flynn; Ron Bellamy; Doe Corporation 1-10; and John Doe 1-10<br><br>Defendants. | Case No. 2:22-CV-00110-TRM-CRW |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## I. INTRODUCTION

Plaintiff Ricky Wood, a former delivery driver for Hut American Group LLC, seeks to recover allegedly owed compensation under the Fair Labor Standards Act of 1938 ("FLSA") and under a common law unjust enrichment theory. Along with Hut American, Wood names Flynn Restaurant Group LP, Jeremy Biser, Greg Flynn, and Ron Bellamy as co-Defendants, on the theory that they are his alleged joint employers. But in suing each of those entities and individuals in this Court, Wood ignores two dispositive threshold issues.

First, as part of his onboarding with Hut American, Wood entered into an arbitration agreement set forth in a Dispute Resolution Program Booklet ("Arbitration Agreement"). That Arbitration Agreement, which is binding under Tennessee law, bars Wood's participation in this action and requires that he pursue all claims, including his present claims for allegedly unpaid

wages, in individual arbitration. Whether directly or as third parties, each Defendant is entitled to enforce the agreement and to compel all of Wood's claims in this action to individual arbitration.

Second, even were Wood's Arbitration Agreement somehow not a complete bar to his claims proceeding in this forum, Biser and Flynn are not subject to personal jurisdiction in in this forum. They are not domiciled in Tennessee. They own no property in Tennessee. And they had no role in the pay and reimbursement decisions that are the subject of Wood's claims. In short, neither Biser nor Flynn have any connection to Tennessee that would permit the exercise of personal jurisdiction—either general or specific—over the claims Wood now asserts against them.

For these reasons, which are discussed in detail below, the Court should compel Plaintiff to arbitrate his claims on an individual basis and stay this action pending arbitration.

## II. FACTUAL BACKGROUND

Hut American is a Pizza Hut franchisee. (Declaration of Troy Baxter, Exhibit A, ¶ 2.) Plaintiff Ricky Wood began working for Hut American as a delivery driver starting in approximately March 2021. (*Id.* ¶ 3.) Wood's deliveries were restricted to the "trade area"—a pre-determined geographic area outside of which deliveries could not occur—for the Newport, Tennessee store from which he worked. (*Id.* ¶ 4.) During the time he was a Hut American driver, all of Wood's deliveries were inside the State of Tennessee. (*Id.*)

On March 23, 2021, as part of onboarding with Hut American, Wood digitally signed his Arbitration Agreement, a copy of which was available to him on a password-protected portal at all times. (*Id.* ¶ 5; *see generally* Declaration of Katrina Petkovic, Exhibit B (describing the process by which Wood created a unique password and digitally signed his agreement).) Wood entered into that agreement with Hut American "and all subsidiaries or affiliated entities, and all successors and assigns of any of them," all of which are collectively defined in the agreement as the "Company." (*Id.* ¶ 5 & Ex. A-1, at 2–7.) Pursuant to the Arbitration Agreement, any and all claims

arising out of or related to Wood's employment and/or his termination of employment were required to be submitted to binding arbitration. (*Id.* Ex. A-1, at 3.) Wood agreed that:

> [c]laims and disputes subject to arbitration include all those legal claims you may now or in the future have against the Company or against its officers, directors, shareholders, employees or agents, including claims related to any Company employee benefit program or against its fiduciaries or administrators (in their personal or official capacity), and all claims that the Company may now or in the future have against you, whether or not arising out of your employment or termination, except as expressly excluded under the "Claims Not Subject to Arbitration" section.

(*Id.*) The Arbitration Agreement also informed Plaintiff of what arbitration is, how arbitration works, what the Arbitration Agreement covered (and did not cover), and how he was waiving any right to bring a class or collective action. (*Id.* at Ex. A-1, at 2–4.) The Arbitration Agreement specifically delineated all "claims for wages or other compensation" as one category of claims covered. (*Id.* at 3.)

Wood ended his employment with Hut American on July 26, 2021, just four months after he started his employment with the company. (Ex. A ¶ 3.) On September 14, 2022, Wood filed his Complaint in this Court, asserting claims for allegedly unpaid compensation, in violation of the Arbitration Agreement. (Dkt. 1.) In his Complaint, Wood named Biser and Flynn as Defendants. Neither Biser nor Flynn, however, are domiciled in Tennessee, nor do they own property in Tennessee. (Declaration of Jeremy Biser, Exhibit C, ¶ 2; Declaration of Greg Flynn, Exhibit D, ¶ 2.) Biser and Flynn also had no personal or active role in determining how Wood was paid or reimbursed. (Ex. C ¶ 3; Ex. D ¶ 3.)

## III. DISCUSSION

### A. Wood's Claims Must Be Compelled to Individual Arbitration

As an initial matter, all of Wood's claims against Defendants may not proceed in this forum because Wood entered into a binding Arbitration Agreement committing those claims to

arbitration. The following sections discuss the standard of review applicable to motions to compel arbitration, and then explain why this Court must compel Wood's claims to individual arbitration and stay this matter.

1. *Standard of Review Applicable to Motions to Compel Arbitration.*

Motions to compel arbitration are reviewed under a summary judgment standard. *See, e.g.*, *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir. 2021) ("The analogy to summary judgment provides the right way to assess a motion to compel arbitration . . . ."). Under that standard, a movant must, as an initial step, "make[] a prima facie showing of the agreement's existence." *See Denton v. Allenbrooke Nursing & Rehab. Ctr., LLC*, 495 F. Supp. 3d 601, 608 (W.D. Tenn. 2020). The party opposing arbitration must then "show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). In making its showing, the party opposing arbitration must identify specific, competent evidence in the record demonstrating a material factual dispute for trial. *Malik v. Equifax Information Servs., LLC*, No. 16-CV-10477, 2016 WL 3900829, at *5 n.6 (E.D. Mich. July 19, 2016) (holding that "[a]n unsworn affidavit" cannot carry a plaintiff's burden). When an agreement to arbitrate has been established, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The Federal Arbitration Act ("FAA") "expresses a strong public policy favoring arbitration of a wide class of disputes." *Cooper v. MRM Investment Co*. 367 F.3d 493, 498 (6th Cir. 2004). "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

2. *Wood Is Required to Arbitrate His Claims Under the FAA.*

Under the FAA,

> . . . a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Although Defendants bear the burden on the first two issues, it is Wood who bears the burden of demonstrating that a claim is nonarbitrable. *See, e.g.*, *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."). As explained below, Wood entered into a binding agreement to arbitrate his claims individually, and Defendants are entitled to enforce the same. The Court should thus compel Wood's claims to arbitration and stay this case pending resolution of Wood's claims.

a. <u>Wood Entered into a Valid Arbitration Agreement.</u>

Wood entered into a valid, binding arbitration agreement. Courts apply ordinary state law principles that govern contract formation to determine whether a valid agreement to arbitrate exists. *See, e.g.*, *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the Arbitration Agreement is governed by Tennessee law.[1] (Ex. A, at Ex. A-1, at 4.) Under Tennessee

---

[1] Under Tennessee choice-of-law rules, when a contractual choice-of-law provision exists, it will be enforced if (1) the provision was executed in good faith, (2) the designated jurisdiction has a material connection to the parties' transaction, and (3) the law of the designated jurisdiction does not go against "a fundamental policy of a state [which possesses] a materially greater interest and whose law would otherwise govern." *Lubinski v. Hub Grp. Trucking, Inc.*, No. 214CV02843JPMDKV, 2015 WL 10732716, at *3 (W.D. Tenn. Sept. 22, 2015), *aff'd*, 690 F. App'x 377 (6th Cir. 2017). Each of those considerations supports application of Tennessee law here. Even without the choice-of-law provision, Tennessee law would apply because the conduct giving rise to Plaintiff's claims—his deliveries and payment for the same—occurred in Tennessee. *See Ehrenfelt v. Janssen Pharms., Inc.*, No. 15-CV-2558-SHL-CGC, 2016 WL 7335922, at *6–7

law, the formation of a valid and enforceable contract requires three elements: offer, acceptance, and consideration. *See Lindsey v. Allstate Ins. Co.*, 34 F. Supp. 2d 636, 650 (W.D. Tenn. 1999).

Here, Wood was offered the Arbitration Agreement when he was provided it for his signature. (Ex. A ¶ 4 & Ex. B-1, at 11.) Wood, in turn, accepted the Arbitration Agreement by electronically signing it.[2] (Ex. A ¶ 5; Ex. B ¶¶ 3–8; *see also Gala v. Tesla Motors TN, Inc.*, No. 2:20-cv-2265-SHM-tmp, 2020 WL 7061764, at *4 (W.D. Tenn. Dec. 2, 2020) ("Tennessee law recognizes the validity of electronically signed contracts.").) Moreover, the Arbitration Agreement is supported by adequate consideration in that (1) the arbitration obligations were mutual and (2) Wood worked for Hut American after entering into the Arbitration Agreement. *See, e.g.*, *Sevier Cty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, 990 F.3d 470, 476 (6th Cir. 2021) ("Mutuality of promises is ample consideration for a contract in Tennessee."); *Mafa v. Amedisys, Inc.*, No. 2:19-2713-TLP-DKV, 2019 WL 7580376, at *3 (W.D. Tenn. Dec. 19, 2019) ("[Plaintiff's] employment after signing the Arbitration Program constitutes sufficient consideration."), *R&R adopted*, 2020 WL 214755 (W.D. Tenn. Jan. 14, 2020). Thus, the Arbitration Agreement is a valid and enforceable contract under Tennessee law.

b. Wood's Claims Fall Within the Scope of the Arbitration Agreement.

Wood's claims also fall within the scope of the Arbitration Agreement. Wood agreed that the claims and disputes subject to arbitration include "all . . . legal claims [Wood] may now or in the future have," including (but not limited to) "claims for wages or other compensation." (Ex. A

---

(W.D. Tenn. June 23, 2016) (applying law of forum where conduct giving rise to claim occurred).

[2] Under Tennessee law, "electronic signatures have the same effect as handwritten signatures," and a "contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." Tenn. Ann. Code § 47-10-107(a)–(b); *accord Hammond v. Floor & Décor Outlets of Am.*, No. 3:19-cv-01099, 2020 WL 6459642, at *11–13 (M.D. Tenn. Nov. 3, 2020).

¶ 5 at Ex. A-1, at 3.) That clause covers the claims at dispute in this action, which are based on Wood's allegation that Defendants failed to adequately compensate him. (Dkt. 1 ¶¶ 1, 186.) Where, as here, the arbitration clause is broadly written, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650–51 (6th Cir. 2008). Because no such exclusion or evidence of exclusion exists in the Arbitration Agreement, Wood's claims are subject to arbitration.

c. The Question of Whether Each Defendant May Enforce the Agreement Has Been Delegated to the Arbitrator, but Even Were the Court to Reach the Issue, All Claims Against All Defendants Must Be Resolved by Arbitration.

Because Wood's claims fall within the scope of an enforceable arbitration agreement, a court, in the typical case, next assesses whether it should enforce the agreement with respect to all Defendants. Here, however, the Arbitration Agreement includes a delegation clause that reserves the resolution of that question for an arbitrator. Even were the Court to reach the question, the Arbitration Agreement may be enforced as to all claims via Hut American or Flynn Restaurant Group as signatories, or by all Defendants individually as express third-party beneficiaries. Alternatively, Defendants are entitled to enforce the Arbitration Agreement under the doctrine of equitable estoppel.

i. *Wood Delegated Issues of Enforceability to the Arbitrator.*

To the extent Wood raises any challenge to the Arbitration Agreement being enforced by any Defendant, such a challenge is outside this Court's ambit because Wood has expressly delegated the resolution of such a challenge to an arbitrator. The Arbitration Agreement provides that it applies the AAA's National Rules for the Resolution of Employment Disputes. (Ex. A ¶ 5, at Ex. A-1, at 4.) Through the Arbitration Agreement's incorporation of the AAA rules, Plaintiff agreed to delegate issues of arbitrability—that is, to arbitrate arbitrability. *See Garg v. Hughston*

*Clinic Orthopaedics*, No. 3:21-CV-00661, 2022 WL 4358090, at *2 (M.D. Tenn. Sept. 20, 2022) (finding that incorporation of AAA Rules delegated arbitrability decisions to the arbitrator).

"The practical effect of a delegation provision is that if arbitrability is challenged, then the arbitrator, not the court, must address that challenge." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022). "Such a challenge may come in the form of a coverage challenge or as an enforceability challenge." *Id.* The question of "[w]hether a non-signatory can enforce [an] arbitration agreement is a question of *enforceability* of the arbitration clause, as to that defendant." *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021). "Whether a non-signatory can enforce a delegation clause is likewise a question of enforceability, not existence." *Becker*, 39 F.4th at 356.

Here, because Wood delegated any issues relating to arbitrability—and, thus, enforceability—to the arbitrator, this Court is without power to rule on the same. *Henry Schein*, 139 S. Ct. at 529. Nevertheless, even were the Court to reach the issue, arbitration would be required for the reasons below.

ii. *The Arbitration Agreement Is Enforceable as to All Claims in This Matter, Either Directly or Under a Third-Party Beneficiary Theory.*

Under the express language of the Arbitration Agreement, each Defendant is entitled to enforce the Agreement, either directly or under a third-party beneficiary theory. The Arbitration Agreement defines "Company" to include "HUT American Group LLC and all subsidiaries or affiliated entities[,]" and the Arbitration Agreement was executed by Defendant Bellamy on behalf of all such entities. (Ex. ¶ 5, at Ex. A-1, at 1, 10.)

Wood's Complaint contends not only that Flynn Restaurant Group LP is "affiliated" with Hut American, but that it is allegedly so closely affiliated that it "own[s] and operate[s]" Hut American and should be considered a joint employer, for purposes of the FLSA.[3] (Dkt. 1 ¶¶ 11–

[3] Defendants deny that Flynn Restaurant Group LP is a joint employer. They note only that Wood's

29; *accord Silva v. Butori Corp.*, No. CV-19-04904-PHX-MTL, 2020 WL 2308528, at *5 (D. Ariz. May 8, 2020) (noting that phrase "affiliated entity" encompasses "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation" (quoting *Affiliate*, BLACK'S LAW DICTIONARY (11th ed. 2019)).) As Wood also admits, Defendant Biser is the President of Hut American (Dkt. 1 ¶ 33); Defendant Flynn is the CEO of Flynn Restaurant Group LP (*id.* ¶ 51); and Defendant Bellamy is the Chief Improvement Officer of Flynn Restaurant Group LP (*id.* ¶ 69). Thus, Hut American and Flynn Restaurant Group fall within the definition of the "Company," and the remaining Defendants are officers and employees covered by the Agreement.

Because the Arbitration Agreement covers "all . . . legal claims . . . against the Company or against its officers [and] . . . employees" (Ex. A ¶ 5, at Ex. A-1, at 3), Hut American and Flynn Restaurant Group, as signatories, may compel the claims against *all Defendants* to arbitration. *See, e.g.*, *Altenhofen v. S. Star Central Gas Pipeline, Inc.*, No. 4:20cv-00030-JHM, 2020 WL 6877575, at *5–8 (W.D. Ky. Nov. 23, 2020) (granting signatory's motion to compel claims against nonsignatory to arbitration when agreement was "broad enough to cover [the plaintiff's] claim against [a nonsignatory]"); *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F. Supp. 3d 1168 (D. Wyo. Apr. 14, 2020) (similar). Moreover, having been expressly referenced as individuals and entities covered by the Arbitration Agreement, every Defendant is entitled to enforce the agreement as a third-party beneficiary under Tennessee law. *See, e.g.*, *C.B.S. Emps. Fed. Credit Union v. Donaldson, Lufkin & Jenrette Secs. Corp.*, No. 88-2677-4B, 1991 WL 185152, at *1 (W.D. Tenn. June 9, 1991) ("A party may enforce a contract as a third-party beneficiary when he demonstrates that the parties to that contract intended to confer a direct benefit to him." (citing

---

claims against Flynn Restaurant Group LP rest on that contention, and thus rise and fall with it.

*United Am. Bank of Memphis v. Gardner*, 706 S.W.2d 639, 641 (Tenn. App. 1985))).

Thus, under its plain language, the Arbitration Agreement must be enforced with respect to the claims against all Defendants.

iii. *Any Non-Signatory Defendant May Enforce the Agreement under the Doctrine of Equitable Estoppel.*

Were any Defendant found to not be a signatory or third-party beneficiary, that Defendant would still be entitled to enforce the Arbitration Agreement under the doctrine of equitable estoppel. Although the Tennessee Supreme Court has not clearly delineated the metes and bounds of the doctrine, at least one federal court in this Circuit has concluded that the Supreme Court is likely to acknowledge estoppel where "a signatory raises allegations of concerted misconduct by both the non-signatory and one or more signatories to the contract." *Green v. Mission Health Communities, LLC*, No. 3:20-cv-00439, 2020 WL 6702866, at *8 (M.D. Tenn. Nov. 13, 2020) (holding that a plaintiff "is estopped from avoiding arbitration, particularly when . . . the plaintiff alleges that the defendants are her joint employers and jointly engaged in the alleged wrongdoing"). Indeed, it would be "especially inequitable" to permit a plaintiff to avoid arbitration against a non-signatory "when the plaintiff alleges joint employment" with a signatory. *Id.*

Here, as Wood admits, Hut American was the entity that paid Wood as his direct employer. (Dkt. 1 ¶¶ 15–19; Ex. A ¶ 3.) Wood, in turn, alleges that the remaining Defendants jointly employed him with Hut American. (Dkt. 1 ¶¶ 23–29, 32–86, 95, 104–17.) Where, as here, "[t]he alleged 'misconduct' in this case is the fact [that non-signatories] did not pay [Wood]" as required by law, yet Hut American "was the one who actually paid" Wood, "the allegations of misconduct against the nonsignatory and the signatory are substantially interdependent." *Reeves v. Enters. Prods. Partners, LP*, 17 F.4th 1008, 1013 (10th Cir. 2021).

In fact, Wood's argument is that Hut American's conduct—its alleged failure to pay Wood in a manner that results in compensation above a minimum wage—is all Defendants' conduct. (Dkt. 71 ¶¶ 15, 125 (alleging that "Hut American's name "appeared on Plaintiff's paystubs for work he completed for Defendants' Pizza Hut stores" before alleging that payments resulted in violations as to all Defendants).) Because Wood's claims against any non-signatory Defendant, if true, would necessarily rest on his ability to demonstrate substantially interdependent and concerted misconduct with Hut American, any non-signatory is entitled to compel those claims to arbitration under the doctrine of equitable estoppel. *See Green*, 2020 WL 6702866, at *8 (identifying "joint employment" as an archetypal situation for application of equitable estoppel).

d. Wood Cannot Show that Congress Intended to Preclude Arbitration of His Claims.

Although Wood bears the burden on the issue, Congress did not intend to preclude arbitration of any of the claims asserted in this matter. *See, e.g., Randolph*, 531 U.S. at 92 ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue.").Thus, this consideration does not change the conclusion that arbitration is required.

e. Wood Must Be Ordered to Arbitrate His Claims on an Individual Basis, and This Case Should Be Stayed.

Because arbitration is required under the FAA for the reasons noted above, the Court should next assess whether arbitration should be compelled on an individual basis and whether a stay is appropriate. Both questions should be answered in the affirmative.

It is well established that "courts may not infer consent to participate in class arbitration absent an affirmative 'contractual basis for concluding that the party agreed to do so.'" *Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1410 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 687 (2010)). Here, Wood's Arbitration Agreement does not include any

affirmative agreement that he may pursue claims on a mass, joint, or other consolidated basis in arbitration. Indeed, the arbitration language expressly precludes him from doing so, providing that his agreement to it "will prevent [him] from filing a lawsuit in Court for individual, class, representative or collective relief for a legal claim subject to arbitration." (Ex. A ¶ 5, at Ex. A-1, at 5.) Thus, Wood must be compelled to arbitrate his claims on an individual basis.

Further, under the FAA, after determining that a matter must be referred to arbitration, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement." *See, e.g.*, 9 U.S.C. § 3. Thus, this Court should stay this matter pending Wood's arbitration. *See, e.g.*, *Manlove v. Volkswagen Aktiengesellschaft*, No. 1:18-CV-145, 2019 WL 2291890, at *4 (E.D. Tenn. Jan. 11, 2019) (McDonough, J.) (declining to dismiss a matter, and instead staying it "pending the arbitrator's ruling," in light of the language in 9 U.S.C. § 3).

**B. To the Extent All Claims Are Not Compelled to Arbitration, the Claims Against Biser and Flynn Must Be Dismissed for Lack of Personal Jurisdiction.**

Even were Wood's Arbitration Agreement not a complete bar to his claims proceeding in this Court (it is), his claims against Biser and Flynn still would not be appropriate in this forum because this Court lacks personal jurisdiction over Biser and Flynn.

1. *Legal Standard for Motions to Dismiss for Lack of Personal Jurisdiction.*

The Sixth Circuit has outlined the analytical framework that applies to motions to dismiss for lack of personal jurisdiction as follows:

> A motion to dismiss under Rule 12(b)(2) involves burden shifting: after the plaintiff makes a prima facie case for personal jurisdiction, which can be done merely through the complaint, the burden shifts to the defendant. The defendant's motion to dismiss must be supported by evidence. The burden then shifts back to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Peters Broadcast Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 437–38 (6th Cir. 2022). "The plaintiff always bears the burden of establishing that jurisdiction exists." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). That burden requires the plaintiff to "establish[] with reasonable particularity sufficient contacts between [the non-resident defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

2. *The Court Lacks Personal Jurisdiction over the Claims Against Biser and Flynn.*

For a court to exercise personal jurisdiction over an individual, jurisdiction must both be authorized by the terms of the forum state's personal-jurisdiction statute and comply with the Fourteenth Amendment's Due Process Clause. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). Relevant here, Tennessee's long-arm statute authorizes the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the Due Process Clause. *See, e.g.*, *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645–46 (Tenn. 2009); *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003). When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

There are two types of personal jurisdiction: general and specific. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Neither exists here.

a. <u>This Court Does Not Have General Jurisdiction over Biser or Flynn.</u>

Wood's Complaint pleads no facts supporting the exercise of general jurisdiction over Biser and Flynn. *See, e.g.*, *Peters*, 40 F.4th at 437 (holding that plaintiff bears initial burden of pleading prima facie case of jurisdiction). "A court may exercise general jurisdiction over a non-

resident defendant when his contacts 'are so continuous and systematic as to render [him] essentially at home in the forum State.'" *Bertazzon Am., LLC v. McDonagh*, No. 3:12-cv-1331, 2013 WL 6048184, at *4 (M.D. Tenn. Nov. 14, 2013) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 924.

Biser and Flynn, however, are not domiciled in Tennessee, do not reside in Tennessee, do not own property in Tennessee, and do not visit Tennessee with any regularity. (Ex. B ¶ 2; Ex. C ¶ 2; *see also Conn v. Zakharov*, 667 F.3d 705, 717-720 (6th Cir. 2012) (affirming that general jurisdiction did not exist over an out-of-state defendant who owned property and made yearly trips to the forum state).) Because Biser and Flynn have no "continuous and systematic" contacts with Tennessee, this Court may not exercise general jurisdiction over them.

b. <u>This Court Does Not Have Specific Jurisdiction over Biser or Flynn.</u>

This Court also cannot exercise specific jurisdiction over Biser or Flynn. Unlike general jurisdiction, specific jurisdiction concerns the specific claims at issue and assesses whether those claims "'arise out of' or 'relate to' a defendant's forum contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984). The Sixth Circuit applies a three-part test to determine whether a court may exercise specific jurisdiction in accordance with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The relation between the defendant and the forum must arise out of contacts created by the defendant—"not the plaintiff[s] or third parties." *Walden v. Fiore*, 571 U.S. 277, 291 (2014).

"[T]here must be an 'affiliation between the forum and the underlying controversy principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1781 (2017). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

Here, there is no connection between Biser and Flynn (as executives of the corporate Defendants), Wood's claims, and the State of Tennessee. "It is settled that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." [4] *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974). Instead, it is only when "an out-of-state agent is *actively and personally* involved in the conduct giving rise to the claim" that an out-of-state officer may be subject to personal jurisdiction in a forum. *Balance Dynamics Corp. v. Schmitt. Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (emphasis added); *see also e.g.*, *Moore v. Weinstein Co. LLC*, No. 3:09-0166, 2010 WL 8913520, *7 (M.D. Tenn. May 12, 2010) ("Relatively passive conduct is not the type of 'deliberate undertaking' that is consistent with purposeful availment.").

[4] Similarly, Wood cannot rely on any joint employment allegations to establish specific personal jurisdiction over Flynn or Biser. *See, e.g.*, *Baughman v. KTH Parts Indus., Inc.*, No. 3:19-CV-8, 2020 WL 1853207, *6 (S.D. Ohio Apr. 13, 2020) ("Whether [defendants] are 'joint employers' under FLSA regulations . . . is different than whether they should be treated as one and the same for personal jurisdiction purposes."); *Mayer v Waste Mgmt., Inc.*, No. 21-CV-0984-BHL, 2022 WL 1213008, at *4 (E.D. Wis. Apr. 25, 2022) (noting that "the weight of authority on this question" has determined that a joint employer theory cannot be relied upon to create personal jurisdiction); *Heidbrink v. ThinkDirect Mktg. Grp., Inc.*, No. 8:14-cv-1232-T-30AEP, 2014 WL 3585698, at *4 (M.D. Fla. July 21, 2014) ("A joint employer theory is relevant to establish liability against a defendant under the FLSA; it is not relevant to establish specific jurisdiction . . . ."); *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010) ("[T]he joint employer issue is not relevant to the specific jurisdiction analysis."). Thus, even if Plaintiff could establish specific jurisdiction for his claims against any other Defendant, that is insufficient to establish specific jurisdiction over Biser or Flynn.

Biser had no personal or active engagement in activities in Tennessee concerning the policies and practices underlying Wood's claims. (Ex. C ¶ 3.) Indeed, Biser was not even employed by Hut American (or any Defendant) until July 2021 (*id.* ¶ 1)—after Wood claims he was already subject to the pay and reimbursement policies he places at issue in his claims and less than a month prior to Wood's employment ending. (Dkt. 1 ¶¶ 15–16, 148 (stating that Wood's claims for allegedly inadequate reimbursement date back to January 2021); Ex. A ¶ 3 (noting that Wood's employment ended on July 26, 2021).) Biser became the Vice President of Strategy and Ops Services for Hut American in July 2021 and the Brand President in June 2022. (Ex. C ¶ 1.) In those roles, Biser did not determine (or provide input into) the manner in which pizza delivery drivers, including Wood, were paid, or whether and how they would be reimbursed for expenses. (*Id.* ¶ 3.)

Similarly, Flynn is the Founder and CEO of Flynn Restaurant Group LP. In this role, he is the senior executive of an organization that did not set or implement the allegedly violative pay and reimbursement policies, and he has no day-to-day supervisory duties over the pay decisions of subsidiaries. (Ex. D ¶ 3.) Flynn was not involved in determining the manner in which pizza delivery drivers, including Wood, were paid, or in determining whether and how they would be reimbursed for expenses. (*Id.*)

At bottom, Biser and Flynn simply did not have the level of "active[] and personal[] involvement in the pay and reimbursement practices Wood places at issue to establish that they purposely availed themselves of the privilege of acting in Tennessee. Nor do Wood's claims arise from any forum-related contact that Biser or Flynn had with Tennessee. Because Wood fails on the first two prongs of the due process inquiry, the Court need not reach the question of whether it would be reasonable to exercise personal jurisdiction over them, precisely because under these

circumstances, it cannot be. *See LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989) ("[F]ailure to meet any one of the three [elements of specific jurisdiction] means that personal jurisdiction may not be invoked.").

Because this Court does not have specific jurisdiction over Biser or Flynn, the claims against those individuals must be dismissed.

## IV. CONCLUSION

In light of the foregoing, Wood's claims against all Defendants must be compelled to individual arbitration. To the extent the claims against Biser and Flynn are not compelled to arbitration, they must be dismissed for lack of personal jurisdiction.

DATED: November 4, 2022

Respectfully submitted,

By:/s/ *James J. Swartz, Jr.*

James J. Swartz, Jr. (TN BPR #034873)
jswartz@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, NE
Suite 2500
Atlanta, GA 30309-3962
Telephone: (404) 704-9656
Facsimile: (404) 892-7056

Christen C. Blackburn (TN BPR #27104)
CBlackburn@lewisthomason.com
LEWIS THOMASON, P.C.
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
Telephone: (615) 574-6732
Facsimile: (615) 259-1389

*Attorneys for Defendants Hut American Group LLC, Flynn Restaurant Group LP, Jeremy Biser, Greg Flynn, and Ron Bellamy*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| Ricky Wood,<br><br>*On behalf of himself and those similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>Hut American Group LLC; Flynn Restaurant Group LP; Jeremy Biser; Greg Flynn; Ron Bellamy; Doe Corporation 1-10; and John Doe 1-10<br><br>Defendants. | Case No. 2:22-CV-00110-TRM-CRW |

## CERTIFICATE OF CONFERENCE

Counsel for Defendants certify that they have conferred with counsel for Plaintiff, who do not consent to the relief requested herein. Defendants further certify that, because this motion raises issues relating to arbitration and personal jurisdiction, those issues cannot be cured through an amendment to Plaintiff's Complaint.

By: */s/ James J. Swartz, Jr.*
James J. Swartz, Jr.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| Ricky Wood,<br><br>*On behalf of himself and those similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>Hut American Group LLC; Flynn Restaurant Group LP; Jeremy Biser; Greg Flynn; Ron Bellamy; Doe Corporation 1-10; and John Doe 1-10<br><br>Defendants. | Case No. 2:22-CV-00110-TRM-CRW |

**CERTIFICATE OF SERVICE**

I certify that on November 4, 2022, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to all counsel of record.

By: *_/s/ James J. Swartz, Jr._*
James J. Swartz, Jr.